UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| ANTHONY L. JACKSON, | ) |
| | ) |
|     Petitioner, | ) |
| | ) |
|   vs. | ) Case No. 11-1311-CV-W-HFS-P |
| | ) |
| LARRY DENNEY, | ) |
| | ) |
|     Respondent. | ) |

## O R D E R

Petitioner seeks habeas corpus relief pursuant to 28 U.S.C. § 2254 from his convictions in the Circuit Court of Jackson County, Missouri, for murder in the first degree and armed criminal action. The Missouri Court of Appeals affirmed petitioner's convictions and the denial of the motion for post-conviction relief he filed pursuant to Missouri Supreme Court Rule 29.15. Respondent's Exhibits H and Q (unpublished opinions).

The Missouri Court of Appeals summarized the facts as follows:

> In April of 2003, Jackson and Rahmaan Belton, the victim, had been dating off and on for approximately four years. They were not involved in an exclusive relationship at the time, and Jackson was seeing another man who lived in Chicago. Jackson made plans to move from his apartment in Kansas City to Chicago. On the afternoon of April 30, 2003, Jackson rented a moving van from Public Storage, and two of his friends helped him move his belongings to a storage unit.
>
> On the night of April 30, Belton was with a friend, Derrick Green. Belton made a phone call from

> Green's apartment. Belton . . . block[ed] the number
> from the caller ID system and signaled for Green to
> be quiet. These were Belton's typical actions when
> he called Jackson from Green's apartment because
> Jackson and Green did not get along. After the phone
> call, Belton drove away from the apartment, and Green
> never saw him again.
>
> On May 1, Jackson returned the moving van to
> Public Storage, and Sharon Ealey checked the van in.
> Ealey noticed that the van had been cleaned with water.
> Jackson had also called Ealey earlier that morning and
> said that he had cleaned the van because he had spilled
> groceries in it and a friend had cut his hand on some
> dishes and gotten blood in the van.
>
> On May 2, Belton's mother filed a missing
> person's report because Belton had not been home since
> April 30. In the early morning hours of May 4,
> Belton's naked and bloody body was found in the trunk
> of his car. The front and sides of Belton's head had
> eleven injuries, including six skull fractures and
> multiple stab wounds. Belton's throat had been cut
> and his carotid artery was severed. Belton's mother
> named Jackson as a possible suspect, and the police
> arrested him.
>
> The police obtained a warrant and searched
> Jackson's apartment, which appeared to have been
> cleaned recently. Officers sprayed the carpet with
> luminol and got a positive reaction, which indicated
> the possible presence of blood. Officers then
> performed a Hemastix test, which also indicated the
> possible presence of blood. . . . The police also
> searched the moving van Jackson had rented and
> discovered blood under the floor slats in the back of
> the van. The blood found in the van was later
> identified as Belton's blood.

Respondent's Exhibit Q, pp. 3-4.[1] In addition to these facts, it is

---

[1] Page citations are to the paper record unless otherwise indicated.

noteworthy that, at some point while in police custody, petitioner "jumped from the police car while it was moving at a speed of 40 mph. He was subsequently recaptured." Respondent's Exhibit H, p. 3.

Petitioner claims 67 grounds for relief; however, he presented only six of those grounds to the Missouri Court of Appeals. The Court will address those grounds first.

As his twenty-second ground for relief, petitioner claims that insufficient evidence was presented at trial to support his conviction for first-degree murder. Specifically, petitioner claims that the State failed to prove the element of deliberation. Doc. 1-1, p. 12 (petition) (citation corresponds to the electronic record). The Missouri Court of Appeals disagreed:

> Deliberation means cool reflection for any length of time no matter how brief . . . [and it] may be inferred when there are multiple wounds or repeated blows.
>
> The evidence and reasonable inferences therefrom demonstrate that sufficient evidence existed for the jurors to find that Jackson deliberated. The evidence presented at trial established that the victim received eleven injuries to his scalp and head, causing five skull fractures. The victim also suffered three stab wounds near his right jawbone and six sharp force defects in the neck. The wounds indicated that both a blunt object and a sharp object were used to inflict the wounds. The evidence also indicated that the victim's body was placed in the trunk of his own car and driven to an area known for abandoned vehicles and that Jackson attempted to cover up the crime by cleaning the cargo area of the moving van. In the instant case, deliberation is certainly inferable from this evidence.

Respondent's Exhibit H, p. 5 (quotation marks and citations omitted).

The Missouri Court of Appeals' resolution of petitioner's insufficient-evidence claim was not based on "an unreasonable determination of the facts in light of the evidence" or an unreasonable application of "clearly established Federal law." 28 U.S.C. § 2254(d)(1) and (2). *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (constitutional standard for judging sufficiency of evidence in criminal trials); *Ellis v. Norris*, 232 F.3d 619, 622 (8th Cir. 2000) (federal habeas court must defer to state court's interpretation of state law), *cert. denied*, 532 U.S. 935 (2001). Petitioner is entitled to no relief on his twenty-second ground.

As his thirty-first ground for relief, petitioner claims that the trial court erred by refusing to suppress statements petitioner made to the police. Doc. 1-1, p. 18 (petition)(citation corresponds to the electronic record). The Missouri Court of Appeals described petitioner's police interrogation as follows:

> Jackson was arrested on May 4, 2003, and interrogated by Detective Donie Hoffman. Detective Hoffman spent approximately one hour building a rapport with Jackson and filling out the Detective Interview Report ("DIR"). After completing the DIR, Jackson signed the *Miranda* form, informing him of his rights. Detective Hoffman began to question him about the murder. Jackson repeatedly denied being involved and eventually asked for an attorney. Detective Hoffman ceased questioning and left the room to inform her supervisor, Sergeant Smith, that Jackson had requested an attorney. Sergeant Smith went into the room to inform Jackson he was going to be charged

4

> with murder. Jackson responded that he no longer
> wanted an attorney and that he wished to continue
> speaking with Detective Hoffman.

Respondent's Exhibit H, p. 6.

Within his thirty-first ground for relief, specifically, petitioner claims that the trial court should have suppressed his statements to the police because the statements (a) "were elicited after implicit promises and threats," (b) "induced after non-Mirandized questioning by officers," and (c) "the product of interrogation after [petitioner] had explicitly asserted his right to counsel." Doc. 1-1, p. 18 (petition) (citation corresponds to the electronic record).

The Missouri Court of Appeals rejected petitioner's claims, holding that (a) "Sergeant Smith's statement [that petitioner was going to be charged with murder and taken to jail] was not a threat but was a truthful non-coercive statement related to the routine incidents of the custodial relationship," (b) "[t]he DIR was [used] merely as a tool to gather background information and build a rapport with Jackson . . . , [and] the court suppressed any information obtained during the DIR regarding Jackson's relationship with the

victim,"[2] and (c) "[w]hen Jackson reinitiated the conversation [by asking to speak again with Detective Hoffman], he effectively waived his previously asserted right to have counsel present." Respondent's Exhibit H, pp. 7-9 (citations omitted).

In a federal habeas corpus proceeding, "a determination of a factual issue made by a State court shall be presumed to be correct [and petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). As in *Thai v. Mapes*, 412 F.3d 970, 977 (8th Cir.), *cert. denied*, 546 U.S. 1039 (2005), petitioner "has not presented clear and convincing evidence sufficient to rebut the presumed correctness of [the state courts' factual findings that underlie the *Miranda*-related issues]." *See* Doc. 11, pp. 23-28 (petitioner's reply) (citation corresponds to the electronic record).

Furthermore, the Missouri Court of Appeals' resolution of petitioner's suppression claims was not based on an unreasonable application of "clearly established Federal law." 28 U.S.C. § 2254(d)(1). *See United States v. Garlewicz*, 493 F.3d 933, 935-36

---

[2] Additionally: "The trial court determined that although aspects of the initial DIR questioning violated *Miranda*, such a violation was not a tactic to elicit a confession or . . . to weaken the defendant's ability to knowingly and voluntarily exercise his constitutional rights. The trial court concluded that Jackson's later warned statement was knowingly and voluntarily given." Respondent's Exhibit H, p. 8 (quotation marks and citation omitted).

(8th Cir. 2007) (statement is involuntary "when it was extracted by threats, violence, or express or implied promises sufficient to overbear the defendant's will and critically impair his capacity for self-determination"); *see also United States v. Sanchez*, 614 F.3d 876, 884 (8th Cir. 2010) (officers' statements as to potential charges against defendant were not threats but a truthful response to the defendant's mother's question as to why her son would go to jail); *United States v. Hull*, 419 F.3d 762, 767 (8th Cir. 2005) (defendant may waive his previously-invoked right to counsel by voluntarily initiating a conversation with police), *cert. denied*, 547 U.S. 1140 (2006). Petitioner is entitled to no relief on his thirty-first ground.

As his second, fourth, seventh, and sixteenth grounds for relief, petitioner claims that he was denied effective assistance of trial counsel. Specifically, petitioner faults his attorneys for failing (2) to object to the racial make-up of the venire, (4) to preserve for appellate review the trial court's exclusion from evidence of a fingerprint found in a reddish stain that petitioner claimed to be blood, (7) to investigate the number of miles petitioner actually drove the moving van before offering the rental records as evidence because, as the prosecutor pointed out, the number of miles actually driven did not match petitioner's version of events, and (16) to object to the verdict director for armed criminal action.

Doc. 1, pp. 17, 20, and Doc. 1-1, pp. 2, 8 (petition).

The Missouri Court of Appeals rejected those claims, concluding that the performance of trial counsel had not been constitutionally deficient because (2) "[e]ven if the venire panel . . . underrepresented African-Americans [the venire was 9.1% African-American, and the population of Jackson County was 23.3% African-American], a single panel that fails to mirror the make-up of the community is insufficient to establish a prima facie case of systematic exclusion," Respondent's Exhibit Q, p. 12 (citations and quotation marks omitted); (4) "no tests were performed to conclusively establish that the [reddish] stain that contained the fingerprint was blood," *id*. at 8; (7) the rental records for the moving van that defense counsel offered as evidence were cumulative to evidence that the prosecutor already had offered, *id*. at 9; and (16) the challenged verdict director "was consistent with the law existing at the time of [petitioner's] trial," *id*. at 11.

As stated previously, in a federal habeas corpus proceeding, "a determination of a factual issue made by a State court shall be presumed to be correct [and petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Petitioner has presented no such evidence regarding the ineffective-assistance claims discussed above. *See* Doc. 11, pp. 9-20 (petitioner's reply) (citation

corresponds to the electronic record).

Furthermore, the Missouri Court of Appeals' resolution of petitioner's ineffective-assistance claims was not based on an unreasonable application of "clearly established Federal law." 28 U.S.C. § 2254(d)(1) and (2). *See Strickland v. Washington*, 466 U.S. 668, 694 (1984) (in order to establish ineffective assistance of counsel, habeas petitioner must show that his attorney's performance fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense); *Dyer v. United States*, 23 F.3d 1424, 1426 (8th Cir. 1994) (attorney's failure to raise a meritless claim does not offend the Constitution). Petitioner is entitled to no relief on his second, fourth, seventh, and sixteenth grounds.

As for his remaining 61 grounds for relief, "[a] habeas petitioner is required to pursue all available avenues of relief in the state courts before the federal courts will consider a claim." *Sloan v. Delo*, 54 F.3d 1371, 1381 (8th Cir. 1995), *cert. denied*, 516 U.S. 1056 (1996). "If a petitioner fails to exhaust state remedies and the court to which he should have presented his claim would now find it procedurally barred, there is a procedural default." *Id*.

Petitioner defaulted all remaining grounds for relief by not presenting those claims to the Missouri Court of Appeals. *Compare* Docs. 1 and 1-1 (federal petition) *with* Respondent's Exhibit D, p. 10 (petitioner's brief on direct appeal) *and*

Respondent's Exhibit L, pp. 14-19 (petitioner's brief on appeal from the denial of post-conviction relief). Petitioner acknowledges as much. *See* Doc. 11, pp. 2-9 (reply) (citation corresponds to the electronic record).

A federal court may not review procedurally defaulted claims "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Petitioner attributes his default to ineffective legal assistance on direct appeal, on the motion for post-conviction relief, and on appeal from the denial of that motion. Doc. 11, pp. 2-9 (petitioner's reply) (citation corresponds to the electronic record).

As for the performance of counsel on direct appeal, which is the basis for 36 grounds for relief,[3] petitioner complains that his attorney "only raised issues in which 'he' felt had merit." Doc. 11, p. 7 (petitioner's reply) (citation corresponds to the electronic record). Actually, that is a good summary of counsel's duty. As explained in *Charboneau v. United States*, 702 F.3d 1132, 1136-37 (8th Cir. 2013): "Experienced advocates since time beyond

---

[3]Grounds 17-21, 33-62, and 67.

memory have emphasized the importance of winnowing out weaker arguments on appeal. Therefore, absent contrary evidence, [a federal court must] assume that appellate counsel's failure to raise a claim was an exercise of sound appellate strategy." (quotation marks and citations omitted). The record in this case leads this Court to such an assumption regarding the performance of counsel on direct appeal.

As for the performance of counsel on the post-conviction motion, which is the basis for five grounds for relief,[4] petitioner relies on *Martinez v. Ryan*, ___ U.S. ___, 132 S.Ct. 1309, 1320 (2012), in which the Court announced that "procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the [State's] initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." *Martinez* establishes a "narrow exception" within the doctrine of procedural default. *Id*. at 1315. In this case, in order to show cause under *Martinez*, petitioner must "demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that [petitioner] must demonstrate that the claim has come merit." *Id*. at 1318-19 (citation omitted).

The underlying ineffective-assistance-of-trial-counsel claims at issue here are that counsel (32) failed to challenge probable cause

---

[4]Grounds 32 and 63-66.

statements used to secure search warrants, (63) stated during the opening statement and closing argument that petitioner was the victim's first boyfriend, (64) stated during closing argument that the victim moved into the home of the mother of petitioner's child, (65) failed to present testimony that a spot on a window blind tested positive for blood, and (66) failed to educate the jury on the use of a particular test to identify the presence of blood. The Court finds that petitioner has failed to demonstrate that these claims are substantial; therefore, petitioner has failed to make the showing required by *Martinez*.

As for the performance of counsel on appeal from the denial of post-conviction relief, which is the basis for 19 grounds for relief,[5] *Martinez* is of no help to petitioner: "The holding in this case does not concern attorney errors in . . . appeals from initial-review collateral proceedings[.]" *Martinez*, 132 S.Ct. at 1320.

For the reasons explained above, petitioner has failed to demonstrate cause for his procedural default. Petitioner also has failed to show that he is "probably actually innocent" of the crimes for which he was convicted. *Bowman v. Gammon*, 85 F.3d 1339, 1346 (8th Cir. 1996), *cert. denied*, 520 U.S. 1128 (1997); *see* Doc. 11 (petitioner's reply) (citation corresponds to the electronic record). The Court finds that further review of petitioner's

---

[5]Grounds 3, 5, 6, 8-15, and 23-30.

defaulted grounds for relief is not required to prevent a fundamental miscarriage of justice.

Accordingly, it is **ORDERED** that this petition for a writ of habeas corpus is denied, and this case is dismissed.

/s/ Howard F. Sachs  
HOWARD F. SACHS  
UNITED STATES DISTRICT JUDGE

Kansas City, Missouri,

Dated: June 16, 2014.